IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Criminal Action No. 19-cr-00566-LKG |
| LUCIAN BERNARD JACKSON | ) ) | Dated:  May 7, 2025 |
| Defendant. | ) ) ) ) ) | |

**MEMORANDUM OPINION AND ORDER ON**
**THE DEFENDANT'S MOTION FOR COMPASSIONATE RELEASE**

**I.      INTRODUCTION**

Defendant, Lucian Bernard Jackson, has filed a motion for compassionate release, pursuant to 18 U.S.C. § 3582(c)(1)(A).  ECF No. 42.  This motion is fully briefed.  ECF Nos. 42, 46, 51, 52, 53 and 54.  No hearing is necessary to resolve this motion.  *See* L.R. 105.6 (D. Md. 2023).  For the reasons that follow, the Court **DENIES** Mr. Jackson's motion for compassionate release.

**II.     BACKGROUND AND PROCEDURAL HISTORY**

Defendant Lucian Bernard Jackson is currently serving three concurrent 120-month sentences of imprisonment, after having been convicted of: (1) Conspiring to distribute cocaine, in violation of 21 U.S.C. § 841(b)(1)(A) and 21 U.S.C § 846 (Count 1); (2) Possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(b)(1)(B) (Count 2); and (3) Being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count 3).  ECF Nos. 17 and 33.  Mr. Jackson is currently incarcerated at FCI Petersburg, with a projected release date of April 3, 2028.  ECF No. 51 at 3.

As background, on August 20, 2020, Mr. Jackson pled guilty to a three-count Superseding Information charging him with the aforementioned criminal offenses.  ECF Nos. 17 and 21.  Attachment A to the parties' Plea Agreement provides the following facts about the charged offenses:

From in or about June 2017, to in or about September 2019, in the District of Maryland and elsewhere, Mr. Jackson acted as a supplier of cocaine in and around the Maryland region,

1

redistributing cocaine to local dealers. *See* ECF No. 22-1. Between in or about October 2017, to in or about September 2019, Mr. Jackson distributed approximately 500 grams of cocaine per week to co-conspirator 1 ("CC-1 "). *Id.* These drug-related transactions generally took place at Mr. Jackson's residence located in Greenbelt, Maryland. *Id.* CC-1 would then distribute the cocaine to 30 or more of CC-1's customers. *Id.*

Mr. Jackson was personally involved in the distribution of, or it was reasonably foreseeable to Mr. Jackson that his co-conspirators distributed in furtherance of the conspiracy, at least 50 kilograms, but less than 150 kilograms, of cocaine. *Id.* On occasion, Mr. Jackson also purchased cocaine from other suppliers, through CC-1, for further distribution. *Id.*

On or about September 19, 2019, Mr. Jackson sold approximately 375 grams of cocaine to CC-1 in exchange for U.S. currency in Greenbelt, Maryland. *Id.* On or about September 25, 2019, Mr. Jackson engaged in a phone conversation with CC- 1, during which he asked CC-1 whether CC-1 was ready to purchase cocaine. *Id.* CC-1 confirmed that CC-1 was ready and Mr. Jackson then agreed to sell CC-1 500 grams of cocaine. *Id.*

On or about September 26, 2019, law enforcement recovered the following items from Mr. Jackson's residence, pursuant to a search warrant: (1) more than 700 grams of cocaine; (2) $81,957 in cash; (3) a Smith & Wesson M&P .45 caliber pistol bearing serial number HUB2468; (3) 54 rounds of .45 caliber ammunition; (4) a Glock 9mm pistol bearing serial number BKKL230; and (5) 114 rounds of 9mm ammunition. *Id.* Law enforcement also recovered $400 in cash from Mr. Jackson's person during his arrest on or about September 26, 2019, and he possessed 700 grams of cocaine with the intent to distribute it and possessed the firearms and ammunition. *Id.* The cash seized from Mr. Jackson's residence and his person was the proceeds that Mr. Jackson obtained as a result of his distribution of cocaine. *Id.*

Lastly, the firearms and the ammunition seized by law enforcement were manufactured outside of the State of Maryland and each of these items traveled in interstate commerce prior to being recovered in the State of Maryland. *Id.* At the time that Mr. Jackson possessed the firearms and ammunition on September 26, 2019, Mr. Jackson had been, and knew that he had been, convicted of a crime punishable by a term of imprisonment exceeding one year, and his civil rights had not been restored. *Id.*

In exchange for Mr. Jackson's guilty plea, the Government agreed to recommend a three-level Sentencing Guidelines reduction, which resulted in a total offense level of 33 in this case. ECF No. 25 at ¶¶ 30 and 31. The parties also stipulated and agreed that a sentence of 120 months

was the appropriate resolution to the case, pursuant to Fed. R. Crim. P. 11(c)(1)(C). ECF No. 22 at 5-6; ECF No. 25 at ¶ 4.

The Court held a sentencing hearing on November 19, 2020. ECF No. 30. At the conclusion of the sentencing hearing, the Court imposed a 120-month sentence of imprisonment for Counts 1, 2 and 3, to run concurrently with each other. ECF No. 33.

On April 13, 2023, Mr. Jackson requested compassionate release from the acting warden of FCI Petersburg. ECF No. 46-1. In his petition, Mr. Jackson states that he needs to be the full-time caregiver for his wife, who he says suffers from kidney disease, diabetes, high blood pressure, "diabetic retnopia," and blindness in one eye. ECF No. 42 at 2. The warden of FCI Petersburg responded to Mr. Jackson's petition on May 18, 2023, by requesting more information, including medical documentation. ECF No. 46-1. But Mr. Jackson did not provide the requested information to the warden. ECF No. 51 at 3.

On May 27, 2022, Mr. Jackson filed a motion for compassionate release. ECF No. 42. On August 12, 2022, Mr. Jackson supplemented his motion to add a new claim that he should receive a compassionate release, because he has several risk factors for COVID-19, including asthma and obesity. ECF No. 46.

On October 25, 2023, the Government filed a response in opposition to Mr. Jackson's motion. ECF No. 51.

Mr. Jackson filed additional supplements to his motion for compassionate release on January 17, 2024, and April 16, 2024. ECF Nos. 53 and 54.

The Defendant's motion for compassionate release having been fully briefed, the Court resolves the pending motion.

### III.    LEGAL STANDARDS
#### A.    Compassionate Release

The United States Court of Appeals for the Fourth Circuit has held that a court "may not modify a term of imprisonment once it has been imposed[.]" 18 U.S.C. § 3582(c); *see United States v. Chambers*, 956 F.3d 667, 671 (4th Cir. 2020); *United States v. Jackson*, 952 F.3d 492, 495 (4th Cir. 2020); *United States v. Martin*, 916 F.3d 389, 395 (4th Cir. 2019). But "the rule of finality is subject to a few narrow exceptions." *Freeman v. United States*, 564 U.S. 522, 526 (2011). One such exception to this rule is when the modification is "expressly permitted by statute." 18 U.S.C. § 3582(c)(1)(B); *see Jackson*, 952 F.3d at 495.

Title 18, United States Code, Section 3582(c)(1)(A)(i), commonly known as the

3

"compassionate release" provision, provides a statutory vehicle to modify a defendant's sentence. *United States v. Wiggins*, 2020 WL 4436373, at *2 (D. Md. Aug 3, 2020). Section 3582 was adopted as part of the Sentencing Reform Act of 1984. *Id*. The statute originally permitted a court to alter a sentence only upon a motion by the Director of the Bureau of Prisons ("BOP"). *See* Pub. L. No. 98-473, § 224(a), 98 Stat. 2030 (1984). And so, a defendant seeking compassionate release had to rely on the BOP Director for relief. *See Jarvis v. Stansberry*, 2008 WL 5337908, at *1 (E.D.Va. Dec. 18, 2008) (denying motion for compassionate release because Section 3582 "vests absolute discretion" in the BOP).

In December 2018, Congress significantly modified the compassionate release mechanism when it enacted the First Step Act of 2018 ("FSA"). *See* Pub. L. 115-391, 132 Stat. 5239 (2018). This Court has held that as amended by the FSA, 18 U.S.C. § 3582(c)(1)(A) permits a court to reduce a sentence of imprisonment "upon motion of the Director of [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility," whichever occurs first. *Wiggins*, 2020 WL 4436373, at *2. And so, once a defendant has exhausted his or her administrative remedies, the defendant may petition this Court directly for compassionate release.[1] *Id*.

Pursuant to Section 3582(c)(1)(A), the Court may modify a defendant's sentence if, "after considering the factors set forth in 18 U.S.C. § 3553(a) to the extent that they are applicable," it finds that:

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the

---

[1] Section 3582(c)(1)(A) requires that a defendant to pursue his or her administrative remedies with BOP by first presenting the request to his or her warden before seeking judicial relief; only then is the court authorized to consider a defendant's § 3582 motion. *See* 18 U.S.C. § 3852(c)(1)(A); *United States v. Muhammad*, 16 F.4th 126, 129-131 (4th Cir. 2021). This requirement is a mandatory claims-processing rule that must be enforced when raised by the government. *See id; United States v. Houck*, 2 F.4th 1082, 1084 (8th Cir. 2021). Defendants seeking compassionate release carry the burden of demonstrating compliance with the "exhaustion requirement." *See* 18 U.S.C. § 3582(c)(1)(A); *United States v. Greenhut*, 2020 WL 509385, at *1 (C.D. Cal. Jan. 31, 2020); *United States v. Hamilton*, 715 F.3d 328, 337 (11th Cir. 2013) (explaining that a defendant, "as the § 3582(c)(2) movant, bears the burden of establishing" eligibility).

4

> Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

*Wiggins*, 2020 WL 4436373, at *3. And so, to be entitled to relief under Section 3582(c)(1)(A)(i), the defendant must demonstrate that: (1) "extraordinary and compelling reasons" warrant a reduction of his sentence; (2) the factors set forth in 18 U.S.C. § 3553(a) countenance a reduction; and (3) the sentence modification is "consistent" with the policy statement issued by the United States Sentencing Commission (the "Commission") in U.S.S.G. § 1B1.13. *Id*.

The Commission is charged with defining "what should be considered extraordinary and compelling reasons for sentence reduction" under 18 U.S.C. § 3582(c)(1)(A). 28 U.S.C. § 994(t). Relevant to the pending motion, the Commission has defined "extraordinary and compelling reasons" to include the following:

> Family Circumstances.—
>
> (A) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (B) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.
>
> (5) Other Reasons.— The defendant presents any other circumstance or combination of circumstances that, when considered by themselves or together with any of the reasons described [above], are similar in gravity to those described [above].

U.S.S.G. § 1B1.13(b). Lastly, the Sentencing Guidelines also provide that:

> Pursuant to 28 U.S.C. § 994(t), rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement. However, rehabilitation of the defendant while serving the sentence may be considered in combination with other circumstances in determining whether and to what extent a reduction in the defendant's term of imprisonment is warranted.

*Id*. at § 1B1.13(d).

IV. **ANALYSIS**

In his motion for compassionate release, Mr. Jackson argues that he is entitled to compassionate release, because: (1) his wife is seriously ill and requires a full-time caregiver; (2)

5

he has a "remarkable" record of rehabilitation; (3) he is at risk of serious adverse health consequences due to COVID-19; and (4) the Section 3553(a) factors weigh in favor of compassionate release. ECF Nos. 42, 46, 52 and 53. And so, Mr. Jackson requests that the Court grant him compassionate release from incarceration. *Id*.

The Government opposes Mr. Jackson's motion and argues that Mr. Jackson is not entitled to compassionate release, because: (1) he has not fully exhausted his petition for compassionate release with regards to his vulnerability to COVID-19; (2) he has not shown "extraordinary and compelling" reasons for compassionate release; and (3) the Section 3553(a) factors do not warrant such relief. ECF No. 51. And so, the Government requests that the Court deny Mr. Jackson's motion. *Id*.

For the reasons that follow, Mr. Jackson has not shown that he has exhausted his claim that his vulnerability to COVID-19 warrants compassionate release. Mr. Jackson also has not met his burden to show an "extraordinary and compelling" reason for compassionate release, based upon the medical condition of his spouse and his rehabilitation while incarcerated. In addition, the applicable Section 3553(a) factors do not support compassionate release. And so, the Court DENIES Mr. Jackson's motion for compassionate release.

### A.   Mr. Jackson Has Not Exhausted His COVID-19 Claim

As an initial matter, Mr. Jackson has not fully exhausted his administrative remedies with respect to his request for compassionate release due to his vulnerability to COVID-19. Section 3582(c)(1)(A) permits the Court to reduce a sentence of imprisonment upon motion of the Director of the BOP or a defendant, after the defendant has fully exhausted all administrative rights and remedies, or the lapse of 30 days from the receipt of a compassionate release request by the warden, whichever occurs first. *Wiggins*, 2020 WL 4436373, at *2. And so, Mr. Jackson may only petition this Court for compassionate release after he has exhausted his administrative remedies or 30 days have elapsed from the warden's receipt of his compassionate release request. *Id*.

In this case, the evidence before the Court shows that Mr. Jackson has not exhausted his administrative remedies with regards to his request for compassionate release due to the medial condition of his spouse. ECF No. 42 at 2. But Mr. Jackson's petition to the warden for FCI Petersburg did not address COVID-19, or seek compassionate release review based upon his own medical conditions. *Id*.

Given this, the warden has not had an opportunity to consider Mr. Jackson's claims

related to COVID-19 and his medical conditions. And so, Mr. Jackson has not exhausted his administrative remedies with regard to his COVID-19 claim and the Court will not consider this claim. *United States v. Cain*, No. 1:16-CR- 00103-JAW-1, 2021 WL 388436, at *5 (D. Me. Feb. 3, 2021) (finding that the defendants "one- time compliance with the exhaustion requirement does not carry forward in perpetuity to all his subsequent compassionate release motions.").

### B. Mr. Jackson Has Not Shown Extraordinary And Compelling Reasons For Compassionate Release

Mr. Jackson has also not shown an extraordinary and compelling reason to warrant compassionate release with regards to the remaining reasons that he advances to reduce his sentence. To be entitled to compassionate relief under Section 3582(c)(1)(A)(i), Mr. Jackson must show, among other things, "extraordinary and compelling reasons" that warrant a reduction of his sentence. *Wiggins*, 2020 WL 4436373, at *3. Mr. Jackson has not satisfied this burden for several reasons.

First, Mr. Jackson has not shown that the medical condition of his wife is an extraordinary and compelling for compassionate release. In this regard, Section 1B1.13 of the Sentencing Guidelines addresses the incapacitation of an inmate's family member and provides that "family circumstances rise to the level of an 'extraordinary and compelling reason' for release where '. . . the defendant's spouse or partner becomes incapacitated and the defendant is the only available caregiver[.]'" *United States v. Evans*, No. CR CCB-18-234, 2021 WL 3725421, at *2 (D. Md. Aug. 23, 2021) (reviewing U.S.S.G § 1B1.13 cmt. n. 1(C)). But, the evidence before the Court does not show that such circumstances are present here.

Notably, Mr. Jackson has provided the Court with a copy of his marriage certificate and certain medical records for himself and his wife. ECF Nos. 42-2, 46-1, 46-2 and 46-3. The Court observes that the medical records provided by Mr. Jackson show that his wife suffers from several serious and chronic ailments, including kidney disease and diabetes. ECF No. 42-2. But these medical records do not show that Mr. Jackson's wife is incapacitated, meaning that she cannot provide any self-care and is completely confined to a bed or chair.[2] *Id*.; *see* BOP Program Statement § 5050.50, https://www.bop.gov/ policy/progstat/5050_050_EN.pdf, at 10; *see also United*

---

[2] The relevant BOP policy statement defines "incapacitation" as "a serious injury, or a debilitating physical illness and the result of the injury or illness is that the spouse . . . is completely disabled, meaning that the spouse . . . cannot carry on any self-care and is totally confined to a bed or chair." BOP Program Statement § 5050.50, https://www.bop.gov/policy/progstat/5050_050_EN.pdf, at 10.

*States v. Collins*, 2020 WL 136859, at *4 n.13 (D. Kan. Jan. 13, 2020) (considering BOP policy statements in evaluating compassionate release motions); *United States v. Strain*, 2020 WL 1977114, at *4, n.49 (D. Alaska Apr. 24, 2020) (same); *United States v. Gutierrez*, 2019 WL 2422601, at *3 (D.N.M. June 10, 2019) (same).

Mr. Jackson also acknowledges that other family members have been caring for his wife. ECF No. 53 (explaining that his wife's daughter has been a caregiver but is unable to provide "24/7" care.). And so, it is also not clear that Mr. Jackson is the only caregiver for his wife.

Given this, the evidence before the Court neither shows that Mr. Jackson's wife is incapacitated, nor that Mr. Jackson would be her sole caregiver. And so, Mr. Jackson simply has not shown an extraordinary and compelling reason for compassionate release. *See United States v. Craig*, No. ELH-18-0450, 2022 U.S. Dist. LEXIS 86935, at *46 (D. Md. May 12, 2022) (finding a defendant's spouse not incapacitated despite suffering a stroke and needing a second surgery because she was not rendered completely unable to care for herself).

Mr. Jackson's record of rehabilitation, while laudable is also not a proper reason for compassionate release. In this regard, the Sentencing Guidelines make clear that "rehabilitation of the defendant is not, by itself, an extraordinary and compelling reason for purposes of this policy statement." U.S.S.G. § 1B1.13(d). And so, Mr. Jackson's rehabilitation is not an extraordinary and compelling reason to reduce his sentence.[3]

C. **The Section 3553(a) Factors Do Not Support Compassionate Release**

The Court observes as a final matter that the relevant factors set forth in 18 U.S.C. § 3553(a) also weigh against compassionate release in this case. *See* U.S.S.G. § 1B1.13; *see also* 18 U.S.C. § 3553(a). Mr. Jackson stands convicted of: (1) Conspiring to distribute cocaine, in violation of 21 U.S.C. § 841(b)(1)(A); 21 U.S.C § 846 (Count 1); (2) Possession with intent to distribute a controlled substance, in violation of 21 U.S.C. § 841(b)(1)(B) (Count 2); and (3) Being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g) (Count 3). ECF Nos.

---

[3] Mr. Jackson has also not shown that his vulnerability to COVID-19 is an extraordinary or compelling reason to reduce his sentence. As this Court has recognized, the President and the Centers for Disease Control and Prevention issued a proclamation declaring that Covid-19 is no longer a national pandemic due to advancements in developing a vaccine, which has led to lower contraction and infection rates on May 11, 2023. *See* https://www.cdc.gov/coronavirus/2019-ncov/your-health/end-of-phe.html. Given this, Mr. Jackson fails to show that he is at more risk of, or more vulnerable to, injury due to COVID-19 than other incarcerated individuals or members of the general public who have similar underlying health conditions.

17 and 33. These are very serious offenses. By engaging in these serious offenses, Mr. Jackson has endangered and undermined the health and safety of this community. ECF No. 22-1.

The Government also raises an important concern that the requested reduction of Mr. Jackson's sentence would reduce his sentence well below the term of imprisonment agreed upon by both parties. Such a reduction would also undermine the important sentencing goals of providing specific and general deterrence from similar criminal conduct.

Given these concerns, the Court declines to reduce Mr. Jackson's sentence on compassionate release grounds. And so, the Court **DENIES** Mr. Jackson's motion for compassionate release.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** the Defendant's motion for compassionate release (ECF No. 42).

**IT IS SO ORDERED.**

s/Lydia Kay Griggsby
LYDIA KAY GRIGGSBY
United States District Judge